ALTENBERND, Judge.
This certiorari proceeding involves an order that stays a junior lender’s lawsuit against certain guarantors until a senior indebtedness has been satisfied or certain priorities become moot. This matter is closely related to an appeal arising from disputes in a complex commercial transaction for which we issue an opinion on the same day that we issue this opinion. See MB Fin. Bank, N.A. v. Paragon Mortg. Holdings, LLC, — So.3d - (Fla. 2d DCA 2012). Based on the reasoning discussed in that case, we grant this petition for writ of certiorari. Subject to the limitations discussed in the MB Financial Bank opinion, Abed, Inc., should be permitted by the trial court to proceed to judgment against the guarantors who are the subject of the stay order.
As is the case in the related appeal, the appendix in this proceeding provides little information about the underlying commercial venture. It is clear, however, that Abed owned the land involved in this real estate venture and that it became a creditor as a result of selling its land to Fuel Investment and Development II, LLC (Fuel). In the following brief explanation of the loan transaction, the only apparent difference between this transaction and the one in the related case is that Abed is the junior lender in this case, whereas a lender now known as Paragon Mortgage Holdings, LLC (Paragon), was the junior lender in the related case.
The borrower, Fuel, had an existing loan of approximately $1,150,000 with Abed in 2006.[1] Fuel had secured this loan with a mortgage on certain property that appears to include at least a portion of the property involved in the related case. Abed’s loan was also protected by personal guaranties signed by four investors in Fuel.[2] The guarantors were Chandresh S. Saraiya, Jugal Taneja, Indira Lalwani, and Vipul Kabaria.
In 2006, this venture apparently needed a sizable influx of capital. Fuel contacted Broadway Bank to obtain a loan.[3] Broadway Bank agreed to loan Fuel $4,800,000. This loan is apparently the same $4,800,000 loan that is described in the related appeal. In the related case, Paragon received $1,000,000 of the Broadway Bank loan, which was used to pay down Fuel’s loan obligations with Paragon, thereby reducing Paragon’s exposure in this venture. Nothing in our record suggests that Abed received a similar pay down.
In connection with the loan from Broadway Bank, the parties entered into a “Subordination and Standstill Agreement.” Broadway Bank, Abed, and Fuel all signed *1134 this agreement.[4] All four of the guarantors signed for Fuel, but not in their capacity as guarantors. This agreement made the larger, newer Broadway Bank loan the “senior indebtedness” and the smaller, older Abed loan the “junior indebtedness.” Except for the changes necessary to make Abed the junior lender rather than Paragon, the subordination and standstill agreement in this case appears to be identical to the subordination and standstill agreement in the related case. Additionally, they were both executed on the same date.
In July 2008, the note to Broadway Bank matured and Fuel did not pay the indebtedness. Two of the guarantors, Chandresh S. Saraiya and Jugal Taneja, formed another entity, Downtown St. Pete Properties, LLC (Downtown Properties). Downtown Properties purchased the senior indebtedness from Broadway Bank. This purchase of all of the senior loan documents was funded by a $1,000,000 payment to Broadway Bank along with a new loan to Downtown Properties in the amount of $3,800,000. The new loan was secured by a security interest in the loan documents for the senior indebtedness with Broadway Bank, including the mortgage and guaranties. This security interest allowed Broadway Bank to recover its interest in the mortgage and guaranties in the event the bank felt its collateral was threatened.
Based on the record in the related appeal and the transcript in this proceeding, it appears that in 2008 Fuel owed money to both Paragon and Abed on junior, subordinated loans and that Fuel owed money to Downtown Properties related to the senior indebtedness with Broadway Bank. Downtown Properties, in turn, owed Broadway Bank $3,800,000. The four guarantors’ exposures on these investments were essentially divided into two groups. The two guarantors who created Downtown Properties indirectly owned the senior indebtedness on which all four guarantors were at risk. Thus, they also indirectly controlled the senior indebtedness to which the Abed loan was subordinated as the junior indebtedness.
Like Paragon, Abed also filed an action against the guarantors to obtain a judgment. Abed filed its action in the circuit court in Pinellas County. Broadway Bank and Downtown Properties also intervened in this action. Unlike the circuit court in Hillsborough County, the circuit court in Pinellas County conducted an evidentiary hearing, but it appears that the court determined that the agreements were unambiguous and did not need to be interpreted with the aid of parol evidence.
Unlike the court in Hillsborough County, the court in Pinellas County did not deem the Broadway Bank loan satisfied. It concluded that the subordination and standstill agreement controlled the rights of the parties and that Abed could not proceed to judgment against the guarantors until the senior indebtedness had been paid or the priority conferred by the agreement became moot. As a result, it entered an order staying Abed’s lawsuit against the guarantors until such time as the senior indebtedness had been paid or the priority conferred by the agreement became moot.
We will not repeat the discussion of the subordination and standstill agreement from our other opinion. See MB Fin. Bank, — So.3d -. We conclude, however, that the order staying this action is incorrect for the reasons explained in the related opinion. The stay could easily *1135 cause irreparable injury if it allowed Paragon or some other unknown party to obtain a judgment with priority over the rights of Abed.[5] Accordingly, we grant this petition for writ of certiorari to the extent that Abed can proceed to judgment against the guarantors, assuming it can prove the elements of its claims against the guarantors. Once it receives a judgment, payment of that judgment will be subordinated to the primary indebtedness. Thus, if any guarantor attempted to satisfy Abed’s judgment, the money delivered to Abed could not be used to pay down its judgment until the senior indebtedness is paid in full. Until that time, Abed would be required to give any “payment” to the holder of the senior indebtedness.
Petition for writ of certiorari granted.
VILLANTI and MORRIS, JJ., Concur.

. The amounts we provide are not intended to be binding as factual determinations, but merely approximations to provide the context of these transactions.

. As explained in MB Financial Bank, the structure is somewhat more complex than described in this opinion.

.MB Financial Bank is the successor to Broadway Bank, and this opinion will describe the lender as Broadway Bank.

. Paragon did not sign the Abed agreement, and Abed did not sign the Paragon agreement. We do not know if one of these loans has priority over the other.

. Whether this order, which stays this action possibly forever, is a nonfinal order to be reviewed by certiorari or an order that could be reviewed by direct appeal, either as a nonfinal order in the nature of an injunction or as a final order, is a very debatable issue. We conclude that the relief we provide in this opinion could be provided by any of these methods. Accordingly, we decline to resolve this jurisdictional issue, which the parties have not raised.